## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHABASH LAWRENCE,
    *Plaintiff*,

    v.

CORRECTION OFFICER AGRAMONTE,
CAPTAIN RUSELL TAYLOR,
CORRECTIONAL COUNSELOR S.
MARTINEZ, and WARDEN BUTRICKS,
    *Defendants.*

No. 3:19-cv-1498 (VAB)

### INITIAL REVIEW ORDER

Shabash Lawrence ("Plaintiff"), an inmate who was formerly housed at Cheshire

Correctional Institution ("Cheshire"), is in the custody of the State of Connecticut Department of

Correction ("DOC"). On September 24, 2019, Mr. Lawrence filed his Complaint under 42

U.S.C. § 1983 against Correction Officer Agramonte, Captain Russell Taylor, and Correctional

Counselor S. Martinez. Compl., ECF No. 1 (Sept. 24, 2019).

While his motion to proceed *in forma pauperis* was pending, Mr. Lawrence filed an

Amended Complaint against Correction Officer Agramonte, Captain Taylor, Correctional

Counselor S. Martinez, and Warden Butricks, alleging that Officer Agramonte endangered his

safety by calling him a rat, homosexual, and child molester; and that Captain Taylor,

Correctional Counselor Martinez, and Warden Butricks knew about Officer Agramonte's

conduct but failed to remedy the situation. Am. Compl., ECF No. 10 (Oct. 18, 2019).

On January 9, 2020, Magistrate Judge Garfinkel granted Mr. Lawrence's motion to

proceed *in forma pauperis.* Order, ECF No. 13 (Jan. 9, 2020).

The Court construes Mr. Lawrence's Complaint as alleging claims for damages based on violation of his First Amendment, Eighth Amendment, and Fourteenth Amendment rights under the United States Constitution.[1] Am. Compl. at 2.

For the following reasons, the Court will permit Mr. Lawrence's Eighth Amendment claims to proceed against Correction Officer Agramonte, Captain Taylor, Correctional Counselor Martinez, and Warden Butricks, and the Court will dismiss the other two claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations[2]

On June 27, 2019, Mr. Lawrence allegedly resided at the Cheshire Correctional Institution Restricted Housing Unit #5 ("RHU"). Second Am. Compl., ¶ 1. Correction Officer Agramonte allegedly toured Mr. Lawrence's unit and stopped at his cell door. *Id.* In a voice allegedly loud enough for other inmates to hear, Correction Officer Agramonte allegedly called Mr. Lawrence a rapist, a rat (snitch), and a homosexual. *Id.* These statements made by Officer Agramonte created safety concerns for Mr. Lawrence. *Id.* ¶ 2. He allegedly has been verbally threatened and picked on by other inmates. *Id.*

He allegedly asked Correction Officer Agramonte about why he called him names and put his safety at risk. *Id.* ¶ 3. Officer Agramonte allegedly stated, "Bye ripper," and walked off to

---

[1]Mr. Lawrence also asserts that Defendants violated his rights under the Constitution of the State of Connecticut. Am. Compl. at 2. The Court, however, limits its review under 28 U.S.C. § 1915A to federal law claims. The core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. If there are any viable federal law claims, then the validity of any accompanying state law claims may be appropriately addressed in the usual course through a motion to dismiss or motion for summary judgment. More generally, a determination under 28 U.S.C. § 1915A is without prejudice to the right of any defendant to seek dismissal of any claims through a motion to dismiss or motion for summary judgment, if the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

[2]All factual allegations are drawn from the Second Amended Complaint.

proceed on his tour on the other side of the RHU. *Id.* During this tour, he allegedly told inmate Dixon that Mr. Lawrence was in prison for rape and instructed him to tell the other inmates on that tier. *Id.* He also allegedly told inmate Phillip Rivera in cell #8 of the RHU to tell Mr. Lawrence to keep his hands off other inmates. *Id.* He allegedly continued to address Mr. Lawrence as a "ripper" and "child molester," and he allegedly told Mr. Lawrence to watch his back when he returned to the General Population Unit. *Id.*

On June 28, 2019, Mr. Lawrence allegedly wrote to Captain Taylor, Correctional Counselor Martinez, and Warden Butricks about his safety concerns resulting from Correction Officer Agramonte's conduct. *Id.* ¶ 4. Captain Taylor allegedly responded to his requests verbally. *Id.* Mr. Lawrence allegedly personally informed Warden Butricks and Captain Taylor about the seriousness of the incidents involving Correction Officer Agramonte. *Id.* ¶ 5. He also allegedly wrote to Captain Taylor requesting a transfer due to the potential of being assaulted as a result of Correction Officer Agramonte's conduct. *Id.* Captain Taylor allegedly responded that Mr. Lawrence's concern regarding possible transfer would be addressed at the conclusion of Phase I of his "Chronic Program," but Captain Taylor allegedly failed to address Correction Officer Agramonte. *Id.*

On July 1, 2019, Mr. Lawrence allegedly wrote to Captain Taylor again about continued harassment from other inmates, including name calling and threats. He allegedly asked to be moved to the other side of segregation. *Id.* ¶ 6. Captain Taylor allegedly responded by indicating that Mr. Lawrence's issue would be addressed at the conclusion of his Phase I. *Id.*

On July 10, 2019, Mr. Lawrence allegedly wrote to Correctional Counselor Martinez requesting a copy of his "sentencing minimums" so that he could show other inmates that Correction Officer Agramonte's accusations were false and stop the harassment and threats. *Id.* ¶

7. He also allegedly asked Counselor Martinez if she had put in his request for a transfer due to the safety risk caused by Correction Officer Agramonte. *Id.* Counselor Martinez allegedly stated that she would talk to him after he completed his Phase I. *Id.*

On July 15, 2019, inmate Andres Josri allegedly was placed at the RHU. *Id.* ¶ 8. He told Mr. Lawrence that Correction Officer Agramonte allegedly had informed him, while he was housed in the North 3 Unit, that there was a "ripper" who would be coming to that unit, and that Josri should make sure that this inmate got hurt when he went out for recreation. *Id.*

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

Mr. Lawrence seeks damages for the alleged violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution by Correction Officer Agramonte, Captain Taylor, Correctional Counselor Martinez, and Warden Butricks.

### A.  The First Amendment Claim

"To prevail on a First Amendment retaliation claim, a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).

Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." (internal quotation marks and citations omitted)); *Booth v. Comm'r of Corr.*, No. 19-cv-100 (MPS), 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing complaints and grievances is protected activity." (citation omitted)). Although not all oral speech by an inmate constitutes protected activity, some courts within the Second Circuit have determined that verbal or oral complaints about the conduct of prison officials or conditions of confinement may constitute protected speech in the context of a First Amendment retaliation claim. *See McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) (verbal complaints may be protected by the First Amendment (collecting cases)). However, "an inmate does not retain those First Amendment rights that are inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pilgrim v. Luther*, 571 F.3d 201, 205 (2d Cir. 2009) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977)). Thus, district courts have concluded that First Amendment protection does not encompass an inmate's strident challenge to authority, *McIntosh*, 2016 WL 1274585, at *26; expressions of disrespect or insolence toward correction

officers, *Young v. Ice*, No. 14-CV-1475, 2015 WL 471675, at *3 (N.D. Ohio Feb. 4, 2015); or

confrontations or discussion of issues with staff, particularly when ordered not to do so, *Martin*

*v. Hurley*, No. 14-CV-66, 2014 WL 7157336, at *2 (E.D. Mo. Dec. 15, 2014) ("Prisoners have

no constitutionally protected right to confront staff and discuss issues with them, particularly

when ordered not to do so." (collecting cases)).

An adverse action, as required for the second prong, refers to "retaliatory conduct that

would deter a similarly situated individual of ordinary firmness from exercising his or her

constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citation and internal

quotation marks omitted). In order to allege causation, the inmate must state facts "suggesting

that the protected conduct was a substantial or motivating factor in the [defendant's] decision to

take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015)

(quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). "Some of the facts often

used to determine retaliatory motive may include (1) temporal proximity between the protected

conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a

finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing

motivation." *Ramos v. Semple*, No. 3:18-cv-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn.

June 10, 2019).

Mr. Lawrence has not alleged a violation of his First Amendment rights. He has not

alleged that he exercised any protected speech or conduct or that any defendant took adverse

action against him on the basis of such protected speech or exercise of his First Amendment

rights. *See generally* Compl.

Accordingly, Mr. Lawrence's claims of violation of his rights under the First Amendment

will be dismissed under 28 U.S.C. § 1915A(b)(1).

B.      **The Eighth Amendment Claim**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991) ("The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." (internal citations omitted)); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted). Prison officials are liable for harm incurred by an inmate if the officials acted with "deliberate indifference" to the safety of the inmate. *Morales v. N.Y. State Dep't of Corrs.,* 842 F.2d 27, 30 (2d Cir. 1988).

To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element. To establish the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of "the minimal civilized measure of life's necessities" or a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834. To establish the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835; *see also Hayes v. N. Y. City*

*Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (noting allegations of mere negligence will not suffice to state a claim of deliberate indifference).

Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006). When evaluating a claim for failure to protect an inmate from harm or deliberate indifference to inmate safety, a court considers "the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. Cty. of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

Courts within the Second Circuit have recognized that verbal harassment or name calling that labels an inmate as a rat, snitch, homosexual, or child molester in front of other inmates can put an inmate's safety at risk and violate the Eighth Amendment; but courts have generally required that the inmate allege that he suffered physical harm. *See Campbell v. Gardiner*, No. 12-CV-6003P, 2014 WL 906160, at *4 (W.D.N.Y. Mar. 7, 2014) (noting that courts generally require physical harm to state Eighth Amendment claim based on verbal harassment (collecting cases)); *see also Corley v. City of N. Y.*, No. 1:14-CV-3202-GHW, 2017 WL 4357662, at *13 (S.D.N.Y. Sept. 28, 2017) (in Fourteenth Amendment context, pretrial detainee could not allege claim of deliberate indifference to his safety after being labeled a snitch and child molester without an allegation of physical harm). At a minimum, an inmate must show that the prison officers' actions gave rise to an excessive risk to his safety or imminent harm. *Hamilton v. Fischer*, No. 6:12-CV-6449 (MAT), 2013 WL 3784153, at *15 (W.D.N.Y. July 18, 2013).

Mr. Lawrence alleges that Correction Officer Agramonte endangered him by identifying him to other inmates as a rapist, child molester, and snitch, and that Captain Taylor, Correctional

Counselor Martinez, and Warden Butricks knew the risk of harm to Mr. Lawrence but failed to take measures to ensure his safety. The Court construes Mr. Lawrence's allegations as asserting an Eighth Amendment claim based on the defendant prison officials' deliberate indifference to his safety.

Although Mr. Lawrence has not alleged that he suffered a physical injury as a result of Correction Officer Agramonte's conduct, he has alleged that he suffered threats from other inmates. Second Am. Comp. ¶¶ 1–3. Moreover, has alleged that Correction Officer Agramonte encouraged other inmates to harm him when he returned to general population. *Id.* at ¶ 8.

Construing the Complaint most favorably, the Court finds that Mr. Lawrence has alleged facts suggesting that he faced an excessive risk of harm as a result of Correction Officer Agramonte's alleged conduct. Moreover, his allegations suggest that Captain Taylor, Correctional Counselor Martinez, and Warden Butricks knew about the risk of harm to Mr. Lawrence but failed to take reasonable measures to ensure his safety by transferring him, addressing Correction Officer Agramonte about his misconduct, or providing Mr. Lawrence with materials to show that Correction Officer Agramonte's claims about him were false. *See Brandon*, 938 F.3d at 37 (supervisory officials who were informed of violation but failed to remedy the violation may be held liable).[3]

The Eighth Amendment claims based on failure to ensure Mr. Lawrence's safety will proceed at this time.

---

[3] The Second Circuit has observed that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

C.      The Fourteenth Amendment Due Process Claim[4]

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations

of life, liberty, or property." U.S Const. amend. XIV. Violation of the substantive standards of

the Due Process Clause requires "conduct that is so outrageously arbitrary as to constitute a gross

abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 259 (2d Cir.

1999).

Mr. Lawrence asserts a claim of defamation. To the extent Mr. Lawrence is asserting a

claim for defamation in violation of the Fourteenth Amendment's Due Process Clause, this claim

fails because he has not alleged a cognizable interest protected under the Fourteenth

Amendment.

The Second Circuit has held that defamation, typically a state-law claim, may under

certain circumstances rise to a constitutional dimension. *Vega v. Lantz*, 596 F.3d 77, 81–

82 (2d Cir. 2010) (holding wrongfully classifying an inmate as a sex offender could be

stigmatizing and may implicate a constitutional liberty interest). In order to state such a due

process violation, Mr. Lawrence must "demonstrate a stigmatizing statement plus a deprivation

of a tangible interest." *Id.* at 81 (quoting *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir.

2005)); *see also Moore v. Chapdelaine*, No. 3:15-cv-775 (VAB), 2018 WL 638995, at *6 (D.

Conn. Jan. 31, 2018) (accord). "There are two components to a 'stigma plus' claim." *Moore*,

2018 WL 638995 at *6. A plaintiff must first establish the "'stigma' by demonstrating 'the

utterance of a statement sufficiently derogatory to injure [his] reputation that is capable of being

proved false, and that [he] claims is false.'" *Id.* (quoting *Vega*, 596 F.3d at 81). A plaintiff then

must next demonstrate the "'plus,' 'a material state-imposed burden or state-imposed alteration

---

[4] The Court construes Plaintiff's claim as one of substantive due process.

of [his] status or rights.'" *Id.* (quoting *Vega*, 596 F.3d at 81). "This state-imposed alteration of status or burden must be 'in addition to the stigmatizing statement.'" *Vega*, 596 F.3d at 81 (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). "However, 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

Here, Mr. Lawrence's allegations suggest harm flowing from Officer Agramonte's allegedly defamatory name-calling, but they fail to establish any "state-imposed alteration of status or burden" in addition to the stigmatizing statements. *See Vega*, 596 F.3d at 81.

Accordingly, his Fourteenth Amendment claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

### D.       The Fourteenth Amendment Equal Protection Claim

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to prove a violation of the Equal Protection Clause, a plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Thus, to prevail on an equal protection claim, a plaintiff must allege that (1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such as race, national origin, religion or some other

12

protected right. *See Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011) (citation omitted).

A plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Mr. Lawrence alleges an equal protection claim under the Fourteenth Amendment. Second Am. Compl. at 5, ¶ 2. But Mr. Lawrence has not alleged discrimination based upon impermissible considerations such as race, national origin, religion or any other suspect class. He also not alleged a plausible equal protection claim under a class of one theory, because he has failed to allege that he was treated differently than comparators so similarly situated as to raise an inference that no rational basis exists for the differential treatment.

Accordingly, Mr. Lawrence's equal protection claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

### E.     Violation of Administrative Directives

Under 42 U.S.C. § 1983, Mr. Lawrence also asserts violations of Administrative Directive 2.17, which concern employee conduct. Second Am. Compl. ¶ 8. However, "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, No. 3:18-cv-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted).

Accordingly, his § 1983 claim based on a violation of an administrative directive will be dismissed under 28 U.S.C. § 1915A(b)(1).

### ORDERS

The Court enters the following orders:

 (1) The case shall proceed on Mr. Lawrence's Eighth Amendment claim for damages against Correction Officer Agramonte, Captain Taylor, Correctional Counselor Martinez, and Warden Butricks. All other claims are **DISMISSED**.

If Mr. Lawrence can allege facts sufficient to cure the deficiencies identified in this ruling, he may file a motion to amend and attach an amended complaint by **June 12, 2020**.

(2) The Clerk of Court shall verify the current work addresses for Correction Officer Agramonte, Captain Taylor, Correctional Counselor Martinez, and Warden Butricks, who are alleged to have worked at Cheshire Correctional Institution, with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to them at their confirmed addresses by **May 29, 2020**, and report on the status of the waiver request on **June 12, 2020**. If any defendant fails to return the waiver request, the Clerk of Court shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that

defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs.

 (4) Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **July 10, 2020**, or **(60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules of Civil Procedure.

(5) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed by **November 13, 2020**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **December 18, 2020**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Mr. Lawrence changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Lawrence must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr.

15

Lawrence has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(10) Mr. Lawrence shall utilize the Prisoner E-filing Program when filing documents with the court. Mr. Lawrence is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the Court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of May, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE